**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CHRISTOPH HENKEL,<br><br>Plaintiff,<br><br>v.<br><br>IRON OAK, INC., and SDE IRONOAK INC f/k/a IRON OAK, LLC.,<br><br>Defendants. | ) | Civil Action No. 26-11624-MJJ |

**MEMORANDUM OF DECISION**

August 21, 2026

JOUN, D.J.

Plaintiff Christoph Henkel ("Plaintiff" or "Henkel") brings this action against Defendants Iron Oak, Inc. and SDE IRONOAK INC, f/k/a Iron Oak, LLC (collectively, "Iron Oak"), seeking a declaration that a Promissory Note (the "Note") in the principal sum of $1,500,000.00 that Plaintiff executed in favor of Iron Oak was cancelled by operation of a Side Letter Agreement between Henkel and Iron Oak. *See* [Doc. No. 1]. After Plaintiff initiated this action, Iron Oak commenced summary proceedings in France (the "French Summary Proceeding") seeking a provisionally enforceable payment order of approximately €1,937,921.45 ($ 2,233,454.47), a European Account Preservation Order to freeze Henkel's bank accounts in Germany and Austria, and an order compelling Henkel to withdraw from this action subject to a penalty of €500,000 per day of delay. [Doc. No. 9 at 1–2]. The President of the Tribunal de commerce de Montauban in France, the commercial court in which the parallel proceedings against Henkel were brought,

reserved the decision regarding the enforceability of the Note to September 2, 2026. [Doc. No. 46 at 3, 5].

Before me is Plaintiff's Emergency Motion for an anti-suit injunction, requesting an order directing Iron Oak to withdraw from the French Summary Proceeding. [Doc. No. 9]. Plaintiff argues that the French Summary Proceeding was brought in direct violation of exclusive forum selection clauses contained in the Promissory Note and the Settlement Agreement designating the Commonwealth of Massachusetts as the sole forum for disputes arising from or relating to those instruments. [*Id.* at 2]. Iron Oak argues that this Court should deny Plaintiff's requested relief or stay this action in deference to insolvency proceedings that are also pending in France, in which the Note is a principal asset, and further argues that this court lacks subject matter jurisdiction and personal jurisdiction, that service was defective, and that principles of comity weigh against granting Plaintiff his requested relief. [Doc. No. 33 at 5–6].[1]

For the reasons explained below, Plaintiff's Motion, [Doc. No. 9], is <u>GRANTED</u>.

## I. BACKGROUND

### A. <u>The Promissory Note and Side Letter</u>

Plaintiff Christoph Henkel is a citizen of Austria. [Doc. No. 1 at ¶ 5]. Iron Oak is a Delaware Corporation with its center of main interests in France. [Doc. No. 31-3 at 1].[2] On or about February 19, 2021, Henkel, on one hand, and Continuum Energy Technologies, LLC

[1] Iron Oak also raises arguments contesting the merits of Plaintiff's case—specifically, whether the Side Letter cancels the Note. [Doc. No. 33 at 16–22]. I need not reach the merits for the purposes of resolving this motion.

[2] Though the Complaint states upon information and belief that Iron Oak is a New Jersey company, [Doc. No. 1 at ¶¶ 6, 7], the record establishes, and the parties agree, that Iron Oak is a Delaware Corporation. *See* [Doc. No. 11-1 at 9]; [Doc. No. 10 at 6]; [Doc. No. 33 at 9]. However, as explained in this decision, there is a dispute as to whether Iron Oak's principal place of business is in France for purposes of diversity jurisdiction.

("CET") and its court-appointed receiver John K. Hannan ("Hannan" or the "Receiver"), on the other hand, entered into a Settlement and Release Agreement (the "Settlement Agreement"). [Doc. No. 1 at ¶ 12]. The Settlement Agreement resolved claims that CET/Hannan and Iron Oak had asserted, or threatened to assert, against Henkel arising out of Henkel's prior investment in CET and his relationship with Iron Oak. [*Id.* at ¶ 13]. Pursuant to Section 1 of the Settlement Agreement, Henkel agreed: (a) to make an initial cash payment of $6,000,000 USD to Iron Oak by wire transfer; and (b) to execute and deliver to Iron Oak a Promissory Note in the principal sum of $1,500,000.00. [*Id.* at ¶ 14]; [Doc. No. 1-6]. Pursuant to Section 2 of the Settlement Agreement, Henkel agreed to execute and deliver the Note to Iron Oak within seven calendar days of the Henkel Settlement Agreement's Effective Date. [Doc. No. 1 at ¶ 15]; [Doc. No. 1-1]. On or about February 22, 2021: (a) Henkel executed and delivered the Promissory Note to Iron Oak; and (b) Henkel and Iron Oak separately executed the Side Letter. [Doc. No. 1 at ¶ 16]; [Doc. No. 1-2]. The Promissory Note, dated February 19, 2021, obligated Henkel as "Maker" to pay Iron Oak, as "Payee," the principal sum of $1,500,000.00 (the "Aggregate Amount"). [Doc. No. 1 at ¶ 17]; [Doc. No. 1-1 at 2]. Pursuant to Section 1 of the Promissory Note, the Aggregate Amount was due and payable on February 19, 2022 (the "Payment Date"), with no interest accruing from execution through the Payment Date. [*Id.*].

On February 16, 2021 (executed February 22, 2021), Henkel and Iron Oak, through its representative Rajiv Gosain, executed a Side Letter. [Doc. No. 1 at ¶ 20]; [Doc. No. 1-2 at 2]. The Side Letter is an ancillary agreement entered into simultaneously with, and as part of the same transaction as, the Settlement Agreement and the Promissory Note. [Doc. No. 1 at ¶ 20]. The Side Letter expressly provides, in relevant part:

> In the event that Continuum Energy Technologies, LLC ('CET') and the CET Receiver, in their sole, exclusive, and unfettered discretion, settle any of CET's

> claims in Civil Action No. 2020-35763 pending in the Harris County District Court, Texas or in Case No. 2084CV03047 filed in the Suffolk County Superior Court in Massachusetts (hereinafter, the 'Actions') prior to February 16, 2022, the Promissory Note between Henkel and Iron Oak Inc., dated February 16, 2021 in the sum of $1,500,000.00 shall be cancelled and Mr. Henkel will have no obligation to make the payment due thereunder.

[Doc. No. 1 at ¶ 21]; [Doc. No. 1-2 at 2]. The Side Letter further provides: "If no settlement agreements are consummated in either Action prior to February 16, 2022, then Mr. Henkel's obligations shall remain as stated in the Promissory Note dated February 16, 2021." [Doc. No. 1 at ¶ 22]; [Doc. No. 1-2 at 2].

Both the Settlement Agreement and the Promissory Note are governed by the laws of the Commonwealth of Massachusetts and designate state and federal courts in Massachusetts as the exclusive forum for any related legal proceedings. [Doc. No. 1 at ¶¶ 18–19]; [Doc. No. 1-6 at 12 ("Each Party to this Agreement . . . irrevocably and unconditionally consents and submits to the exclusive jurisdiction and venue of the Massachusetts Courts . . . .")]; [Doc. No. 1-1 at 3 ("EACH PARTY HERETO AGREES THAT THE STATE AND FEDERAL COURTS IN THE COMMONWEALTH OF MASSACHUSETTS HAVE EXCLUSIVE JURISDICTION OVER ANY ACTION OR PROCEEDING THAT ARISES FROM OR RELATES TO THIS NOTE.")].

### B. The Massachusetts Action

The Massachusetts Action, captioned *John Hannan, as Court-Appointed Receiver for Continuum Energy Technologies, LLC v. Corinna von Schonau-Riedweg, et al.*, Civil Action No. 2084CV03047 (Suffolk Superior Court), was filed by the Receiver in December 2020. [Doc. No. 1 at ¶ 24]. On January 27, 2022, the parties in the case jointly moved the Suffolk Superior Court to continue a status conference scheduled for February 7, 2022, representing to the Court that the parties have been actively engaged in settlement negotiations and, if successful, such resolution will dispose of all the remaining issues in the litigation. [Doc. No. 1 at ¶ 28]. On February 8,

2022—eight days before the February 16, 2022 deadline in the Side Letter—the parties to the Massachusetts case filed a joint stipulation of dismissal. [Doc. No. 1 at ¶¶ 29, 30]. The Complaint alleges that this stipulation constitutes a "written memorialization" of a settlement between the parties, and constitutes a binding, enforceable settlement agreement, which triggers the Side Letter such that the Promissory Note is canceled. [Doc. No. 1 at ¶¶ 29, 31–36].

### C. The French Insolvency Proceeding

On April 29, 2025, the Tribunal de commerce de Montauban (the "French Commercial Court") opened a sauvegarde[3] proceeding for Iron Oak (the "French Insolvency Proceeding"). [Doc. No. 11-1 at 9]. On December 9, 2025, however, the French Commercial Court closed the sauvegarde, finding that Iron Oak had obtained the proceedings by fraud to circumvent an anti-suit injunction ordered by the New York State Supreme Court. *See* [Doc. No. 11-1 at 15 (finding that "the safeguard proceedings were requested and opened for the benefit of IRONOAK for the sole purpose of circumventing the anti-suit injunction and diverting the benefits of the provisions of French law regarding insolvency proceedings to its own advantage.")]. The French Commercial Court also found that Iron Oak does not have any employees in France and did not "demonstrate any actual business activity in France." [*Id.* at 14]. Iron Oak appealed, and on January 27, 2026, the Cour d'appel de Toulouse (the "French Court of Appeals") ordered a stay of the provisional enforcement of the French Commercial Court's December 9, 2025 judgment, leaving the sauvegarde open pending resolution of the appeal. [Doc. No. 11-2 at 12]. The French Court of Appeals will render its decision on October 20, 2026. [Doc. No. 28 at 17].

---

[3] A sauvegarde proceeding is a safeguard proceeding that is established upon the request of a debtor who, "without being in a state of insolvency, can demonstrate difficulties that he is unable to overcome. This procedure is intended to facilitate the reorganization of the business in order to enable the continuation of economic activity, the preservation of employment, and the settlement of liabilities." [Doc. No. 11-1 at 14].

### D. <u>The Demand Letter, Present Litigation, and French Summary Proceeding</u>

On March 15, 2026, Iron Oak's French counsel sent Henkel a formal demand letter demanding payment of $2,196,150 (the original $1.5M principal plus compounded 10% default interest). [Doc. No. 1-5 at 2]. On April 7, 2026, Henkel filed the present action for declaratory judgment in this Court. [Doc. No. 1]. Sometime after Plaintiff filed the present action, Iron Oak filed an *Assignation en référé* (the "French Summary Proceeding") before the President of French Commercial Court of Montauban with a hearing date of April 15, 2026, seeking: (a) a provisional payment order of approximately €1,937,921.45 ($2,233,454.47); (b) a declaration that Henkel's filing of this Massachusetts action constitutes "manifestly unlawful interference" with the French sauvegarde; (c) an order compelling Henkel to withdraw from this action, subject to a penalty of €500,000 per day of delay; and (d) a European Account Preservation Order to identify and freeze Henkel's bank accounts in Germany and Austria. *See* [Doc. No. 11-4 at 18]. Henkel did not learn of this scheduled hearing until April 22, 2026, when he received a physical mailing containing the summons, and then later learned that the hearing had been rescheduled to June 24, 2026. [Doc. No. 11 at ¶ 8]. The next merits hearing is scheduled for September 2, 2026, on which date the President will render his decision. [Doc. No. 28 at 17].

## II. LEGAL STANDARD

"It is common ground that federal courts have the power to enjoin those subject to their personal jurisdiction from pursuing litigation before foreign tribunals." *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 16 (1st Cir. 2004). "However, American courts observe a presumption in favor of concurrent jurisdiction, and parallel proceedings on the same claim are, in the vast majority of instances, allowed to proceed simultaneously." *Athina Invs. Ltd. v. Pinchuk*, 443 F. Supp. 2d 177, 179 (D. Mass. 2006) (citing *Quaak*, 361 F.3d at 16–17).

Although the present motion is for an emergency injunction, the traditional four-part test for preliminary injunctions is an "awkward fit in cases involving international antisuit injunctions," and as such, "district courts have no obligation to employ it in that context." *Quaak*, 361 F.3d at 19 (citations omitted).

The First Circuit has established a two-step framework for determining whether an antisuit injunction is appropriate. First, the Court must resolve the "gatekeeping inquiry" to determine "whether parallel suits involve the same parties and issues." *Id.* at 18. If this threshold condition is satisfied, the Court must then examine the "totality of the circumstances," to determine whether an injunction is proper. *Id.* at 19. The court may consider factors such as, but not limited to: "the nature of the two actions (i.e., whether they are merely parallel or whether the foreign action is more properly classified as interdictory); the posture of the proceedings in the two countries; the conduct of the parties (including their good faith or lack thereof); the importance of the policies at stake in the litigation; and, finally, the extent to which the foreign action has the potential to undermine the forum court's ability to reach a just and speedy result." *Id.*

## III. ANALYSIS

### A. <u>Subject Matter Jurisdiction</u>

First, Defendants argue that this court lacks subject matter jurisdiction. Plaintiff invoked subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), which provides that, if the amount in controversy requirement is met, district courts "shall have original jurisdiction of all civil actions where the matter . . . is between . . . citizens of a State and citizens or subjects of a foreign state." Here, Plaintiff is a citizen of Austria and is therefore a citizen of a foreign state for the purposes of diversity jurisdiction. [Doc. No. 1 at ¶ 5]. The parties agree that Iron Oak is a citizen of Delaware

and maintains its center of main interests in France. [Doc. No. 31-3 at 1]. Iron Oak argues that because its principal place of business is in France, there is a lack of complete diversity.

It is well-established that "no diversity exists when an alien appears on both sides with a domestic party or parties on only one side." *Auctus Fund, LLC v. Drone Guarder, Inc.*, 588 F. Supp. 3d 177, 184 (D. Mass. 2022) (citations omitted); *You v. Zang*, No. 23-13177, 2024 WL 4626224, at *3 (D. Mass. Oct. 30, 2024) ("The presence of *any* aliens on both sides of a litigation defeats diversity jurisdiction") (emphasis in original) (citations omitted). At the motion hearing, Plaintiff argued that when there is a dual citizen, "only the American citizenship is relevant for purposes of diversity under 28 U.S.C. 1332," citing to *Falken Indus., Ltd. v. Johansen*, 360 F. Supp. 2d 208, 210 (D. Mass. 2005) [Doc. No. 40 at 12]. However, that case involved an *individual* who obtained American citizenship by birth but was domiciled in France. *Falken*, 360 F. Supp. 2d at 209–210. There, the court determined that "for a dual national citizen," only the individual's "United States citizenship controls." *Id.* at 210. Here, the inquiry is different where a corporation's citizenship can be, and often is, in multiple places. "A corporation's citizenship, for diversity jurisdiction purposes, is both the state where it is incorporated and the state 'where it has its principal place of business.'" *Celli v. Greenwich Ins. Co.*, 478 F. Supp. 3d 93, 95–96 (D. Mass. 2020) (citing 28 U.S.C. § 1332 (c)(1)). Thus, the holding in *Falken* is inapplicable here.

However, that does not necessarily mean that Defendants have defeated jurisdiction. It is undisputed that Iron Oak is a citizen of Delaware. And while the parties seem to agree that Iron Oak's "center of main interests" is in France, that does not necessarily establish that Iron Oak's "principal place of business" is in France for the purposes of diversity jurisdiction. *See* [Doc. No. 11-1 at 15 (explaining that in France, "The center of main interests for companies and legal entities is presumed to be the company's registered office. However, this simple presumption may be

rebutted in favor of the place where the debtor habitually manages its interests")]. When analyzing the record in the context of this jurisdictional analysis, I cannot find that France is Iron Oak's principal place of business.

The Supreme Court has instructed courts to use the "nerve center" test to identify a corporation's principal place of business. *Celli*, 478 F. Supp. 3d at 96 (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010)). Under this test, a corporation's principal place of business is "the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Id.* (citing *Hertz*, 559 U.S. at 80). Iron Oak argues that "[e]very locus bearing on where Iron Oak is directed and administered is in France" because it opened insolvency proceedings, and its affairs and assets are now being administered by court-appointed administrators. [Doc. No. 33 at 10]. That is not evidence of business being conducted in France. Rather, the record contains facts that muddy those waters. The French Commercial Court found that:

> The accounting records of IRONOAK are maintained by an American certified public accountant, indicating a primary business activity in that country; That the information and documents provided during the observation period revealed the absence of any actual activity at the facility located in [Iron Oak's French office]; It appears that the interests of IRONOAK INC are based in the United States; It must be noted that IRONOAK INC deliberately failed to provide, at the opening of the proceedings, the information necessary to verify the actual operation of the facility located in Gramont (82).

[Doc. No. 11-1 at 15]. While I acknowledge that these findings are on appeal and the French Court of Appeals issued a stay of the order pending appeal, the stay order does not constitute a reversal of those findings on the merits.[4]

[4] I further note that the grounds for staying the initial insolvency judgment on appeal were due to a procedural error—the French Commercial Court excluded Iron Oak's response to the Public Prosecutor's fraud allegations, in violation of the French Code of Civil Procedure. [Doc. No. 28 at ¶ 25].

Given that Iron Oak's status as a French business remains unclear, I decline to acknowledge France as its principal place of business. Because Iron Oak is a citizen of Delaware, complete diversity exists and this Court may retain subject matter jurisdiction.

**B. Personal Jurisdiction**

Next, Defendants argue that this court lacks personal jurisdiction over Iron Oak because, even assuming the Note's forum-selection clause supplies consent, the clause confers no power to issue the anti-injunction order. [Doc. No. 33 at 11]. "[A]ntisuit injunctions operate only on parties who are within the personal jurisdiction of the Court." *Athina*, 443 F. Supp. 2d at 179. It is undisputed that the forum selection clause here is valid and binding and that the parties consented to the personal jurisdiction of this court. [Doc. No. 1-6 at 12]; *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 52 (1st Cir. 1999) ("Courts must give effect to . . . freely-negotiated forum selection clauses") (citation omitted). Defendants argue that they do not necessarily dispute this Court's power over Iron Oak, only that an injunction would be futile and improper because asking this Court to compel Iron Oak to "withdraw" from the French Commercial Court proceedings are not within Iron Oak's private litigation to abandon. [Doc. No. 33 at 11].

Defendants cite to the declarations of Maître Jean Baron, the *administrateur judiciaire* (judicial administrator) of the Iron Oak sauvegarde, and Maître Guillaume Enjalbert, a *mandataire judiciaire*, an insolvency officer court-appointed by the Iron Oak sauvegarde to represent the creditor body, (not Iron Oak). [Doc. No. 27, 29]. Iron Oak relies on these declarations to support its contention that the relief Plaintiff seeks cannot be granted without the concurrence of these officers. [Doc. No. 33 at 11]. Maître Baron states that "Iron Oak's management cannot take binding action with respect to estate assets—including the Promissory Note at issue in this action—without

my concurrence." [Doc. No. 27 at ¶ 5]. Maître Enjalbert states that he "cannot comply with any order directing withdrawal or abandonment of the French proceedings without authorization from the Tribunal de Commerce de Montauban," and that "[a]ny attempt to comply with [] an injunction by withdrawing the French proceedings without my concurrence and without Tribunal de Commerce de Montauban authorization would itself constitute a violation of French insolvency law." [Doc. No. 29 at ¶ 8]. Neither of these statements amount to a showing that an injunction would be futile. Rather, an injunction would simply require that the insolvency officers comply by obtaining authorization from the French Commercial Court. As such, I am not persuaded by Defendants' personal jurisdiction argument.

### C. <u>Service of Process</u>

Finally, Defendants argue that service was defective. This argument is unpersuasive for several reasons. First, Defendants do not dispute that the parties unambiguously agreed to the manner of service in both the Promissory Note and the Settlement Agreement. Plaintiff's Notice of Service of Process states that service was made pursuant to Sections 6(a) and 7 of the Promissory Note, via email and certified mail. [Doc. No. 6]. Section 6(a) of the Promissory Note states, "SERVICE MAY BE MADE AS SET FORTH IN SECTION 12 WITH RESPECT TO SERVICE OF NOTICES, AND THAT SERVICE SO MADE SHALL BE AS EFFECTIVE AS IF PERSONALLY MADE IN THE COMMONWEALTH OF MASSACHUSETTS." [Doc. No. 1-1 at 3]. The Promissory Note cross-references to a "Section 12," and there is no Section 12 in the Note. Defendants argue that Section 6(a)'s cross-reference to a "nonexistent Section 12" in the Note makes it a "nullity." [Doc. No. 28 at ¶¶ 6–8]. But it is fairly understood by both parties that the Promissory Note was made simultaneously with the Settlement Agreement, and Defendants do not argue that the Note's cross-reference to Section 12 could be to anything other than Section

12 of the Settlement Agreement. Section 12 of the Settlement Agreement lists the mailing addresses and email addresses of the entities that are to be served but does not explain the method of service. [Doc. No. 1-6 at 12–13]. Rather, Section 7 of the Note explains that process, which Plaintiff followed. Section 7 explains that service is effectuated by both certified mail and email. [Doc. No. 1-1 at 4]. While Defendants argue that email service and service by mail here were not made *simultaneously*—Plaintiff served Defendants via email on April 8, 2026 and by certified mail on April 30, 2026, [Doc. No. 28 at ¶¶ 6, 10]—nothing in the Note indicates that service in both forms must be done simultaneously in order for service to be effectuated. Indeed, Plaintiff filed his Notice of Service on April 30, 2026, indicating that service was complete once he met the Note's requirements. [Doc. No. 6].

Defendants' remaining arguments are that Plaintiff did not service Iron Oak through its Delaware registered agent or in France, he mailed service to a "mailbox at which Iron Oak does not receive process," and he mailed service to the "Sydow Firm" which is not a defendant and is itself a debtor in the insolvency proceeding. [Doc. No. 33 at 12]. Plaintiff's service to these addresses and entities is contemplated by the Settlement Agreement that Defendants agreed to. [Doc. No. 1-6 at 13]. The Settlement Agreement specifically lists the address that Defendants claim does not exist, and states that a copy must be mailed to the Sydow Firm. [*Id.*]. Defendants do not attempt to address this established fact or argue that Plaintiff should have followed some other process.

Lastly, Defendants' argument that Plaintiff's service was not accompanied by a French-language translation pursuant to the Hague Convention does not suffice to defeat this action. "When an alleged defect in service is due to a minor, technical error, only actual prejudice to the defendant or evidence of a flagrant disregard of the requirements of the rules justifies dismissal."

*Libertad v. Welch*, 53 F.3d 428, 440 (1st Cir. 1995), *abrogated on other grounds by United States v. Velazquez-Fontanez*, 6 F.4th 205 (1st Cir. 2021). No prejudice has been demonstrated here.

**D. Anti-Suit Injunction**

After careful application of the *Quaak* standard for issuing anti-suit injunctions, I find that Plaintiff has met his burden of rebutting the presumption against international antisuit injunctions such that an anti-suit injunction against the French Summary Proceeding is warranted.

First, Plaintiff has made the threshold showing that the present action and the French Summary Proceeding involve the same parties and the same issues. Indeed, Defendants do not dispute that the present action and the French Summary Proceeding seek to resolve the same issue: "whether the Plaintiff owes the Defendants monies pursuant to a promissory note executed by the Plaintiff and Iron Oak, Inc., on February 22, 2021." [Doc. No. 33 at 14].

Second, I find that the totality of the circumstances warrants an injunction against the French Summary Proceeding. The court may consider whether the two actions are "merely parallel or whether the foreign action is more properly classified as interdictory." *Quaak*, 361 F.3d at 19. In the French Summary Proceeding, Iron Oak seeks a €500,000-per-day penalty against Henkel for each day Henkel continues to prosecute his lawsuit in the contractually designated Massachusetts forum, seeks an order compelling Henkel to withdraw the present action, and seeks a European Account Preservation Order to freeze Henkel's bank accounts across Germany and Austria. [Doc. No. 10 at 10]. This type of action is "is plainly interdictory in nature." *Quaak*, 361 F.3d at 20 (finding that Belgian action in which defendants were seeking to impose "huge financial penalties on the securities fraud plaintiffs should they take any steps to enforce the district court's turnover order" were interdictory in nature). It appears that the French Summary Proceeding is an

"attempt to chill" this Court's power to rule on the enforceability of the Note—an issue that has been exclusively reserved to this jurisdiction by a binding forum selection clause. *Id.*

The court may also consider the procedural posture of the two cases. Defendants argue that the two cases are in different procedural postures because "the proceeding in France has been in progress since April 29, 2025; whereas this United States action was filed approximately one year later on April 7, 2026." [Doc. No. 33 at 14]. But the April 29, 2025 proceeding is the French *Insolvency* Proceeding, which Defendants do not seek to enjoin. Rather, the present action was filed on April 7, 2026, and the French *Summary* Proceeding was filed sometime after, with an initial hearing date set for April 15, 2026. *See* [Doc. No. 11-4]. The parties have been served and have appeared in both proceedings, *see* [Doc. No. 33 at 7–8], and both proceedings request resolution of the same question of enforceability. The French Commercial Court is poised to rule on that question as soon as September 2, 2026. [*Id.* at 8]. As such, the procedural postures of both actions are in similar stages.

The equities also balance in favor of Plaintiff. With respect to anti-suit injunctions, "considerations of international comity must be given substantial weight." *Quaak*, 361 F.3d at 18. Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Id.* at 18–19 (citation omitted). Here, an injunction would not seriously implicate comity concerns. As the First Circuit held in *Quaak*, it is Defendants, not Plaintiff, who "set the stage for a crisis of comity." *Id.* at 20–21. In *Quaak*, the First Circuit found that "[i]f [defendant] had not filed a foreign petition calculated to generate interference with an ongoing American case, the district court would

have had no need to issue a defensive injunction that sought only to preserve the court's ability to adjudicate the claims before it according to the law of the United States." *Id.*

The same is true here. That fact that the Note is now in the hands of the officers overseeing the French Insolvency Proceeding does not prevent this Court from resolving the enforceability question. There is no evidence that the enforceability of the Note is at issue in the French Insolvency Proceeding or that the court in that proceeding has been asked to or is poised to rule on that issue. Instead of seeking an answer to that question here, Defendants created their own crisis of comity by putting that question before the French Summary Proceeding. "Where, as here, a party institutes a foreign action in a blatant attempt to evade the rightful authority of the forum court, the need for an antisuit injunction crests." *Id.* (citation omitted).

Additionally, Defendants have put forth no evidence that "the issuance of an injunction really would throw a monkey wrench, however small, into the foreign relations of the United States." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 887 (9th Cir. 2012) (citation omitted) (holding that "where two parties have made a prior contractual commitment to litigate disputes in a particular forum, upholding that commitment by enjoining litigation in some other forum is unlikely to implicate comity concerns at all."). On the other hand, "[a]ntisuit injunctions are also justified when necessary to prevent litigants' evasion of the forum's important public policies." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 931 (D.C. Cir. 1984). Here, Massachusetts has a policy interest in enforcing valid, binding, and enforceable forum selection clauses. *Power Prods. Sales & Serv., Inc. v. Hydratight, Inc.*, No. 19-11502, 2019 WL 5068320, at *2 (D. Mass. Oct. 9, 2019) ("Indeed, a valid forum selection clause is to be enforced in all but the most exceptional cases") (citation omitted). Defendants cite no authority to support their argument that "a garden variety promissory note dispute (albeit for a substantial sum of money)

does not constitute a policy of sufficient magnitude to rebut the presumption against issuance of an antisuit order," and is particularly unpersuasive in light of the binding forum selection clause. [Doc. No. 33 at 15].

Defendants' remaining arguments are that Plaintiff has failed to show irreparable harm where he himself has appeared in the French Summary Proceeding and intervened in the French Insolvency Proceeding. [Doc. No. 33 at 13]. However, Plaintiff is not required to demonstrate irreparable harm for the purposes of this injunction. But even if he were required to do so, the fact that he appeared in the French proceedings would not vitiate such a showing. Indeed, it is Defendants who put Plaintiff in this position: either appear in the French Summary Proceeding—opened in violation of the forum selection clause—or forfeit millions of dollars by defaulting from that proceeding. There was only one rational choice Plaintiff could make.

For these reasons, I find that Plaintiff has met his heavy burden of rebutting the presumption against an anti-suit injunction, and that such injunction is warranted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion, [Doc. No. 9], is GRANTED. Defendants are hereby ORDERED, within 7 days of this order, or by August 28, 2026, to provide a copy of this decision to, and request authorization from, the President of the Tribunal de commerce de Montauban in France to permit Iron Oak to withdraw from the French Summary Proceeding and to permit the insolvency officers overseeing Iron Oak's sauvegarde to concur in that withdrawal. Defendants are to file a status report, by September 1, 2026, detailing their compliance with this order.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge